UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELORES PURIFOY,

      Plaintiff,                                 Case No. 12-cv-13330
                                           HON. GERSHWIN A. DRAIN

v.

UNITED OF OMAHA LIFE INSURANCE
COMPANY,

      Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [#11], DENYING DEFENDANT'S MOTION FOR JUDGMENT AFFIRMING THE ADMINISTRATOR'S DECISION [#12] REMANDING TO THE PLAN ADMINISTRATOR FOR A DECISION CONCERNING PLAINTIFF'S RIGHT TO LONG-TERM DISABILITY BENEFITS AND DISMISSING ACTION**

**I.    INTRODUCTION**

On July 28, 2012, Plaintiff, Delores Purifoy, filed the instant action claiming Defendant, United of Omaha Life Insurance Company, breached the terms of an employee benefit plan by denying her claim for short-term disability ("STD") benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq*. Presently before the Court are the following motions: (1) Plaintiff's Motion Requesting Judgment on the Administrative Record, filed on April 22, 2013, and (2) Defendant's Motion to Affirm the Administrator's Decision, also filed on April 22, 2013. The parties' motions are fully briefed and

the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the motions will be resolved on the briefs submitted pursuant to E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court grants Plaintiff's Motion Requesting Judgment on the Administrative Record and denies Defendant's Motion for Judgment Affirming the Administrator's Decision.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's STD benefits claim

Plaintiff began working for Greektown Casino-Hotel/Greektown Casino, LLC ("Greektown Casino") on October 12, 2001 as a Food Cart Attendant. Greektown Casino's Job Description for a Food Cart Attendant states in relevant part:

> TYPICAL PHYSICAL/MENTAL DEMANDS: Requires mobility. Requires prolonged standing. Requires bending and reaching from floor level to 7 ft. Requires lifting up to 80 lbs. Requires normal sense of smell, taste, touch, and sound. Requires normal vision range. Requires eye/hand coordination and manual dexterity. Requires the use [of] electrical equipment. Requires regular, predictable attendance.

AR 168. Greektown Casino further listed examples of Plaintiff's job duties as a Food Cart Attendant:

1. Organize and prep food cart menu items as directed by Chef.
2. Assist with other staff in assuring "great" customer service.
3. Responsible for the sanitation of the general work area of their cart, as well as surrounding areas of the casino and food courts.
4. Responsible for setting up, maintaining, breaking down, and cleaning a specific food cart station.
5. Perform food preparation functions as necessary or assigned.
6. Work the casino floor.
7. Other job related duties as assigned.

*Id.*

As a benefit of her employment, Greektown Casino sponsored the Greektown Casino, LLC Short and Long-Term Disability Plan (the "Plan"). Under the Plan, STD benefits are provided to

eligible participants who satisfy the criteria for receipt of such benefits. Specifically, under the Plan, disability is defined as follows:

> [B]ecause of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
>
> • prevented from performing at least one of the Material Duties of Your Regular Job on a part-time or full-time basis; and
> • unable to generate Current Earnings which exceed 80% of Your Weekly Earnings due to that same Injury or Sickness.
>
> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with Your employer.

AR 13.

On August 14, 2011, Plaintiff claims she was forced to stop working due to significant degenerative spinal pathologies, upper extremity neuropathy and carpel tunnel syndrome that caused chronic pain and functional impairments. On September 13, 2011, Plaintiff submitted a claim for STD benefits. Plaintiff described the nature of her illness as "lower back pain, leg pain, right and left hand pain, up and down arms" with an onset date of August 15, 2011. AR 162. Plaintiff also checked "Yes" in response to the question: "Was the disability work related?" *Id*. Plaintiff further indicated that she had not filed a workers' compensation claim. *Id*. Greektown Casino prepared an Employer's Statement dated September 19, 2011 indicating that Plaintiff's illness was not work related. AR 165. Greektown Casino also described the strength demand required for Plaintiff's position as "light" with a 20 lbs. maximum lifting requirement and a frequent lifting requirement of 10 lbs. *Id.* Plaintiff's treating physician, Christina L. Clark, also prepared a physician's statement on September 14, 2011. AR 166-67. Dr. Clark's statement indicates that Plaintiff's illness is work related. *Id.*

On September 29, 2011, Defendant denied Plaintiff's claim based upon the Plan's workers'

compensation exclusion ("General Exclusion (f)") that precludes the payment of short-term disability benefits for any claim that is attributable to a workplace injury. AR 143-144. Defendant's September 29, 2011 letter stated in relevant part:

> The provision(s) in your policy on which the denial of your claim is based on, stated the following:
>
> **General Exclusions**
> We will not pay benefits for any Disability which is caused by, contributed to by, or resulting from:
>
> (f)     an occupational Sickness or Injury, unless You cannot be covered by workers' compensation law.

AR 143. On October 17, 2011, Ms. Banderas contacted Plaintiff concerning pending medical records. AR 47. At this time, Plaintiff advised Ms. Banderas that there was no new work related injury and that her last workers' compensation claim was filed in 2008. Ms. Banderas informed Plaintiff that she would review new medical records and advise Plaintiff as to her STD claim.

On November 3, 2011, Defendant referred Plaintiff's records to a Nurse Case Manager, April Ewing, RN CCM, for review. On November 7, 2011, following a review of Plaintiff's medical records from July 19, 2011 through October 18, 2011, Ms. Ewing opined that "[t]here is no clinical or diagnostic evidence of a focal neurological deficit. Examinations do not suggest compromise in strength, range of motion, or sensory function." AR 174. On November 13, 2011, Defendant sent a letter to Plaintiff informing her of its decision to deny her STD benefits claim, indicating that the "documentation does not support disability nor an inability to perform your job duties." AR 111. Specifically, the letter stated in pertinent part:

> There is no weakness or decrease in range of motion to the upper extremities on examination. The MRI of the lumbar spine revealed no significant narrowing to the spine. The cervical MRI revealed some mild flattening of the spinal cord, however, the CSF fluid is preserved. You were referred by Dr. Clark to physical therapy and

to a neurosurgeon, however, you have yet to be seen by either physician.

AR. 110-11.

Plaintiff retained counsel and filed an appeal of Defendant's denial of her STD benefits claim on June 14, 2012. Plaintiff's counsel sent medical records and a narrative report from Dr. Clark, dated June 10, 2012. AR 57-59. After another file review by Defendant's nurse, Sara Schmit, RN BSN, Defendant upheld its decision denying Plaintiff's STD benefits claim on July 24, 2012. Ms. Schmit opined:

> The claimant is a 60-year-old female with a diagnosis of lumbar and cervical disc disease. According to the APS the claimant has symptoms of stiffness aggravated by standing, bending, and lifting. The claimant reports pain in upper neck with pain radiating into bilateral shoulders. According to the past history provided by the claimant, back pain has bene present for some years, but has recently gotten worse. The claimant underwent lumbosacral x-rays as well as MRI of the lumbar and cervical spine. MRI shows significant arthritis degenerative disc changes of the cervical and lumbar spine. The claimant's physical examination notes tenderness to the spine, but negative leg raise. There is tenderness of the cervical spine that is aggravated with flexion and rotation consistent with complaints of bilateral shoulder pain with tingling radiating down arms, however, there is no objective documentation (electromyography/EMG) to confirm muscle or nerve dysfunction. . . . The claimant reports increased stress at work due to a recent change in work schedule and increased demands. Despite the reported symptoms, function is preserved with no focal neurological deficit noted. There is no validity of restrictions based on the medical evidence.

AR 178.

### B. Medical Evidence

Plaintiff was a regular patient of Dr. Clark, who had treated Plaintiff for the past twenty years for chronic hypothyroidism and anemia. On August 15, 2011, Plaintiff was seen by Dr. Clark for complaints of worsening back and radicular pain, numbness and tingling in both her wrists. AR 67. Dr. Clark diagnosed Plaintiff as suffering from lumbar disc syndrome and ordered a follow up

appointment in a week. *Id.* On August 24, 2011, Plaintiff continued to complain of worsening back pain, and Dr. Clark noted:

> Pt with h/o carpel [sic] tunnel syndrome and complaints of low back strain. Pt. states having stress at work. Notes crying in office. Pt. states recently . . . at work to evenings & increased demands. Pt. states having to stand from 6:00 p.m. to 2:00 a.m. noted unable to sit during the day. Pt currently taking Naprosyn w/out relief . . . back and tenderness L3-5 spinal and paraspinal tenderness . . . neg straight leg test.

AR 66. September 1, 2011, X-rays reveal degenerative spinal changes, notably at L3-L4. AR 121.

On September 7, 2011, Plaintiff was seen by Dr. Clark, who noted:

> Pt has X-ray done significant L4-L5 deg disc. Pt notes pain with prolonged standing or sitting. Pt notes stiffness in the arm. Pt states also experiencing pain radiating from neck down both arms.

AR 65-66. Additionally, a September 30, 2011 cervical MRI showed:

> 1. C5-6 central disc protrusion mildly flattens thecal sac and spinal cord though GCF is preserved along the dorsal aspect of the cord.
> 2. Mild spondylotic foraminal narrowing is appreciated at C5-6 bilaterally and C6-7 on the left.
> 3. Minimal retrolisthesis is appreciated of the C5 on C6 and grade 1 anterolisthesis of C4 on C5.

AR 124, 128. A September 30, 2011 lumbar MRI indicated:

> 1. Multilevel disc bulges without significant spinal canal narrowing.
> 2. Multilevel facet joint arthropathy.
> 3. Mild spondylotic foraminal narrowing is appreciated at L3-4 on the right.
> 4. L3-4 and L4-5 disc degeneration, intervertebral disc space narrowing, and endplate changes.

AR 122-23. On October 3, 2011, Dr. Clark noted that Plaintiff's MRIs showed significant arthritis and referred her to Dr. Diaz for a neurological consult. AR 65. On October 4, 2011, Plaintiff followed up with Dr. Clark to learn the MRI results. She continued to report significant back and neck pain and significant tingling into her hands. She also stated that it would be difficult to lift

heavy pans, which was an integral part of her job duties. *Id.* On exam, Dr. Clark found back and spinal tenderness, L3-L5 paraspinal muscle hypertrophy, decreased range of motion, and pain with flexion. *Id.* She referred Plaintiff to Dr. Claybrooks for physical therapy and continued Plaintiff's pain medications.

On December 19, 2011, Plaintiff treated with Dr. Clark for ongoing back, neck and shoulder pain that radiated into both hands. Plaintiff informed Dr. Clark that her insurance had been cancelled and she could not afford to treat with either Dr. Diaz or Dr. Claybrooks. On June 10, 2012, Dr. Clark prepared a narrative report summarizing Plaintiff's medical history, diagnoses and prognosis. AR 58-59. Specifically, Dr. Clark indicated the following:

> Ms. Purifoy's MRI showed significant findings in both the cervical and lumbar spine. She had central disc protrusion of C5-6 with retrolisthesis and grade 1 anterolisthesis in the same region. She had mild spondylotic foraminal narrowing at C5-6 and C6-7. The results also showed multilevel disc bulges at L3-4, L4-5 and L5-6. She also had multiple areas of degenerative changes most significant at L3-4 and L4-5.
>
>      *        *        *
>
> Ms. Purifoy was never able to meet with the neurosurgeon or complete her course of physical therapy due to the cancellation of her insurance. This was detrimental to her treatment course. I believe the neurosurgeon may have order[sic] additional studies to determine the extent of her neuropathy in her upper extremities. Ms. Purifoy would likely have benefitted greatly from physical therapy by improving her range of motion and decreasing her pain. I do not think surgery would have been the initial course of action. However, without the expert analysis by the neurosurgeon, I cannot be sure.
>
> Ms. Purifoy's injuries would have certainly made it impossible for her to stand 8 hours a day while carrying heavy trays that weigh 5-10 pounds. The peripheral neuropathy in both her wrist would limit her ability to lift heavy objects without the risk of dropping them. She certainly would not be able to lift anywhere close to 80 lbs at any time. Ms. Purifoy would require several unscheduled breaks throughout the day to take the pressure off her back.
>
> Her injuries render her medically disabled for her specified duties as of August 15,

2011.

*Id.*

## III.  LAW & ANALYSIS

### A.  Standard of Review

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). The Sixth Circuit requires "a clear grant of discretion" to the administrator or fiduciary before replacing the *de novo* standard of review. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). "When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998). "When a court reviews a decision *de novo*, it simply decides whether or not it agrees with the decision under review." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). Under the *de novo* standard, the court does not presume the correctness of the administrator's benefits determination nor does it provide deference to its decision. *Id.* at 966. If a plan gives the administrator discretion, the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). Such decisions are not arbitrary and capricious if the decision to terminate benefits was the product of deliberate principled decision-making and based on substantial evidence. *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 2005).

Plaintiff argues, and Defendant concedes, that the *de novo* standard of review applies to the

instant matter. *See Am. Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009). Here, the Plan was amended on June 1, 2011, thus, even if the Plan contains a discretionary clause, Michigan statutory law prohibits its application to this action and the Court must review Plaintiff's claim using a *de novo* standard of review. On March 1, 2007, Michigan banned the use of discretionary clauses in insurance policies, and the United States Court of Appeals for the Sixth Circuit has determined that this law is not preempted by ERISA. *Id*.; *see also Gray v. Mutual of Omaha Life Insurance Co.*, No. 11-15016, 2012 U.S. Dist. LEXIS 101682 (E.D. Mich. July 23, 2012); *Pierzynksi v. Liberty Life Assurance Co.*, No. 10-14369, 2012 U.S. Dist. LEXIS 111216 (E.D. Mich. Aug. 8, 2012) (finding that the policy was revised after July 1, 2007 and applying a *de novo* standard of review to reverse the defendant's benefits decision). Thus, this Court "must determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." *Wilkins*, 150 F.3d at 619.

### B. Defendant's Denial of Plaintiff's STD Benefits Claim

Plaintiff maintains that Defendant ignored critical medical evidence, failed to analyze the medical evidence in conjunction with Plaintiff's job description as well as the Plan's definition of disability, and erroneously denied her claim for short-term, and presumed long-term disability benefits. Conversely, Defendant argues that Plaintiff's conditions do not amount to a functional impairment that prevents her from performing the material duties of her position

Here, the Court concludes that Defendant improperly interpreted the Plan in light of Plaintiff's medical evidence and she is entitled to benefits pursuant to the Plan language. Defendant acknowledges Plaintiff "feels aches and pain and has a history of carpel tunnel syndrome and neck and back pain problems of a degenerative nature consistent with age, [however, Defendant] does not

agree that these conditions amount to functional impairment that prevents plaintiff from performing the material duties of her regular job." *See* Def.'s Mot. at 11.

The Plan's definition for disability states:

**Disability and Disabled** means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:

    (a) prevented from performing at least one of the Material Duties of Your Regular Job on a part-time or full-time basis; and
    (b) unable to generate Current Earnings which exceed 80% of Your Weekly Earnings due to that same Injury or Sickness.

AR 39. Additionally, material duties include "the essential tasks, functions, and operations relating to Your Regular Job that cannot be reasonably omitted or modified." AR 40. Plaintiff's job duties require her to organize and prepare the food cart, including set up, maintenance, and cleaning, in addition to her food preparation duties, requiring an ability to lift heavy pots and pans. The physical demands of Plaintiff's position require mobility, prolonged standing, bending and reaching, the ability to lift up to 80 pounds, with frequent lifting of up to 10 pounds.

Contrary to the nurse reviewers' conclusions, there was ample evidence to demonstrate Plaintiff's spinal pathologies and carpal tunnel syndrome prevent her from performing at least one of the material duties of her regular job. Cervical and lumbar MRIs show degenerative disc disease, with significant degenerative changes at L3-4, L4-5, and L5-6, multilevel disc bulges, and spondylotic foraminal narrowing. Dr. Clark's examinations further reveal decreased strength and range of motion abilities due to Plaintiff's carpel tunnel syndrome and neuropathy in her upper extremities, with radicular pain from the neck downward.

The nurse file reviewers either completely ignored, or outright rejected without explanation,

Plaintiff's treating physician's conclusions concerning her medical condition and its resulting impact on her ability to perform the material duties of her position. Specifically, Dr. Clark opined that Plaintiff's spinal pathologies and carpel tunnel syndrome prevented her from standing for an eight hour day and carrying heavy trays without risking dropping them. While a plan administrator is not obligated to blindly accept the opinions of treating physicians, it may not solely rely on its employees' opinions, while automatically discarding a credible treating physician's opinion:

> Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("[A] plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician.")
>
>     \*        \*        \*
>
> Of course, MetLife need not defer automatically to the treating physician's opinion. However, that MetLife gave "greater weight" to a non-treating physician's opinion for no apparent reason lends force to the conclusion that MetLife acted arbitrarily and capriciously.

*Elliott v. Metro Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006); *see also Pierzynski*, 2012 U.S. Dist. LEXIS 111216, \*at 9.

In addition to ignoring or selectively considering the evidence, Defendant improperly discredited Plaintiff's credibility concerning the description of her symptoms and pain, finding Plaintiff's complaints of disabling pain incredible because she failed to be seen by a neurosurgeon or obtain physical therapy treatment recommended by Dr. Clark. The record demonstrates Plaintiff could not afford to treat with these medical providers because she had no health insurance. The record further shows that conservative treatment was unsuccessful in remedying Plaintiff's symptoms.

Defendant's misplaced reliance on Plaintiff's failure to treat with a neurosurgeon and

apparent outright rejection of Plaintiff's treating physician's conclusions evidences the disingenuous and erroneous denial of Plaintiff's STD benefits claim. "[W]here an administrator exercises its discretion to conduct a file review, credibility determinations without the benefit of a physical examination support a conclusion that the decision was arbitrary." *Helfman v. GE Grp. Life Assur. Co.*, 573 F.3d 383, 395-96 (6th Cir. 2009); *see also Evans v. UNUMProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("[T]he failure to conduct a physical examination–especially where the right to do so is specifically reserved in the plant –may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."); *Gray*, 2012 U.S. Dist. LEXIS 101682, at *18-19. Defendant's decision to ignore Plaintiff's treating physician's diagnosis and conclusions without ordering an independent physical examination is additional evidence that Defendant acted improperly in denying Plaintiff's STD benefits claim.

Defendant argues there is no explanation in the record as to why Plaintiff's back and wrist pain suddenly became acute in August of 2011 in an attempt to support its rejection of Plaintiff's credibility. Defendant's argument misconstrues the relevant inquiry, which is not why Plaintiff's medical condition suddenly worsened. Rather, the pertinent question is whether Plaintiff's condition prevented her from performing at least one of the material duties of her occupation, which include frequent lifting of pans and trays weighing up to ten pounds and occasional lifting of trays weighing up to twenty to eighty pounds, as well as physical demands of mobility and the ability to stand for prolonged periods of time.

To the extent Defendant suggests the Plan requires Plaintiff to have a sudden, disabling event before August 14, 2011, such an interpretation is beyond the scope of the Plan's definition of disability. The relevant language states: "Disability and Disabled means that because of an Injury

or Sickness, a significant change in Your . . . physical functional capacity has occurred . . . ." AR 39. Further, the United States Court of Appeals for the Sixth Circuit has held that "there is no 'logical incompatibility between working full time and being disabled from working full time.'" *Delisle v. Sun Life Assur. Co.*, 558 F.3d 440, 448 (6th Cir. 2009) (citing *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860 (6th Cir. 2007)). Thus, it is entirely credible that Plaintiff was disabled while she was working, a fact not just ignored by Defendant, but apparently construed against Plaintiff.

Based on a *de novo* review of the administrative record, the Court concludes that the lumbar and cervical MRI studies showing spinal pathologies, along with Dr. Clark's examinations of Plaintiff evidencing carpel tunnel syndrome and upper extremity neuropathy and her conclusions concerning Plaintiff's ability to perform her material job duties, including, but not limited to, lifting heavy pans and trays during food preparation and food cart set up, demonstrates Plaintiff is disabled within the meaning of the Plan.

The Court further rejects Defendant's alternative argument that it properly rejected Plaintiff's STD benefits claim based on General Exclusion (f) in the Plan. This provision states:

> We will not pay benefits for any Disability which is caused by, contributed by, or resulting from:
>
> (f) an occupational Sickness or Injury, unless You cannot be covered by workers' compensation law.

AR 26. It is simply inaccurate for Defendant to argue that it denied Plaintiff's STD benefits claim because Plaintiff's disability is caused by an occupational sickness. First, Greektown Casino submitted a statement to Defendant denying that Plaintiff's claim for STD benefits was based on an occupational injury. Additionally, the evidence of record shows that Plaintiff suffers from

significant spinal pathologies which were not the result of a workplace accident or acute injury. Thus, Plaintiff did not file a workers' compensation claim because she is ineligible for such benefits.

Defendant's original denial of Plaintiff's claim was based on the improper conclusion that her illness was compensable under workers' compensation law. In October of 2007, Plaintiff informed Defendant that she had not filed a workers' compensation claim for the instant injury. On November 13, 2011, Defendant received a denial letter from the Worker's Compensation Agency[1] and proceeded with its merits review of Plaintiff's claim presumably because it determined that Plaintiff was not in fact eligible for workers' compensation benefits. Defendant's merits review of Plaintiff's STD benefits claim effectively abandons its denial based on General Exclusion (f). Neither the November 13, 2011, nor the July 24, 2012 denial letters reference this exclusion as a basis for denying Plaintiff's STD benefits claim. Thus, it strains credulity for Defendant to maintain that Plaintiff was not entitled to STD benefits because she was eligible for workers' compensation benefits. If this were true, Defendant would not have conducted a merits review in November of 2011 or July of 2012, it would have simply upheld its original denial based on General Exclusion (f).

## IV. CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's Motion Requesting Judgment on the Administrative Record [#11] is GRANTED with respect to Plaintiff's request for payment of short-term disability benefits. Plaintiff's request for payment of long-term disability benefits is denied

---

[1] It is unclear why Defendant failed to include this letter as part of the administrative record since it was a document that Defendant reviewed during its administrative review of Plaintiff's STD benefits claim.

without prejudice.  Defendant has not had an opportunity to evaluate Plaintiff's entitlement to these benefits, therefore her request is premature and unexhausted.  Defendant's Motion for Judgment Affirming the Administrator's Decision [#12] is DENIED.  This matter is remanded to the Plan Administrator for a determination of Plaintiff's eligibility for long-term disability benefits.  This matter may be reopened by either party, without costs, after Defendant issues its final decision on Plaintiff's claim for long-term disability benefits.

    SO ORDERED.

Dated: July 30, 2013                                    s/Gershwin A. Drain
                                                        GERSHWIN A. DRAIN
                                                        UNITED STATES DISTRICT JUDGE